1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8
     Daniel Oquita Gutierrez,              )
9                                          )        CV-12-712-TUC-DTF
                     Petitioner,           )
10                                         )
     vs.                                   )        **ORDER**
11                                         )
     Warden Richard A. Bock, et al.,       )
12                                         )
                     Respondents.          )
13   _____)

14          Petitioner Daniel Gutierrez, presently incarcerated at the Arizona State Prison - Yuma-

15   Cheyenne Unit, in San Luis, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant

16   to 28 U.S.C. § 2254. Before this Court are the Petition (Doc. 1), Respondents' Answer (Doc.

17   9), and Petitioner's reply and supplement thereto (Docs. 11, 12). The parties consented to

18   exercise of jurisdiction by a Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). (Doc. 10.)

19   The Court finds that the petition should be denied.

20                    **FACTUAL AND PROCEDURAL BACKGROUND**

21          Petitioner was convicted in the Superior Court of Pima County of three counts of

22   aggravated assault with a deadly weapon, two counts of aggravated assault resulting in

23   serious physical injury, one count of aggravated assault resulting in temporary but substantial

24   disfigurement and one count of manslaughter. (Doc. 9, Ex. B at 1-2.)  He was sentenced to

25   a total term of imprisonment of 66 years. (*Id.* at 2.)

26          The Arizona Court of Appeals summarized the facts, taking them in the light most

27   favorable to the prosecution, as follows:

28          In December 2004, Gutierrez and his girlfriend went to a house party for a
            friend's twenty-first birthday. Inside the house were a "deejay" and about forty

1
2
3

to sixty guests. Sometime around two a.m., a fight broke out between two men in the front room of the house. Another man, apparently not directly involved in that altercation, fired two shots toward the crowded house as he backed out the front door. Two witnesses who were in the front yard observed the shooting and saw the shooter run past them down the street.

4
5

Three victims inside the house were seriously injured as a result of the shooting. . . .

6
7
8
9
10

After the shooting, the gunman ran away from the house, jumped a fence, and entered another yard. Shortly afterward, a neighbor saw a man come from that direction and get into a dark-colored pickup truck with large lifted "four-by-four" tires. Gutierrez and his girlfriend drove to the party in a black pickup truck matching that description. Police found the gun used in the shootings in a nearby backyard. No fingerprints were identified on the gun, shell casings founds at the scene, or on the live rounds still in the gun. A criminalist, however, later matched Gutierrez's DNA with a sample found on the grip of the gun.

11

(*Id.* at 2-3.)

12
13
14
15
16
17
18
19

Petitioner filed a direct appeal, which was denied on March 17, 2008. (Doc. 9, Ex. B.) Petitioner did not seek review with the state supreme court and the court of appeals issued its mandate on May 20, 2008. (*Id.*, Ex. C.) On June 19, 2008, Petitioner filed a Notice of Post-conviction Relief (PCR). (*Id.*, Ex. D.) After holding an evidentiary hearing, the trial judge denied the PCR petition on the merits. (*Id.*, Ex. G.) Petitioner sought review at the court of appeals, which granted review but denied relief on the merits. (*Id.*, Ex. J.) Review at the supreme court was denied on September 30, 2010; subsequently, the appellate court issued a mandate on November 15, 2010. (*Id.*, Exs. K, L.)

19
20
21
22
23

On March 1, 2011, Petitioner filed a second PCR notice. (*Id.*, Ex. M.) The PCR court found the claims precluded. (*Id.*, Ex. O.) The appellate court granted review but denied relief finding all of the claims precluded. (*Id.*, Ex. Q.) The court issued its mandate on June 29, 2012. (*Id.*, Ex. R.)

24
25
26
27
28

## **DISCUSSION**

Respondents argue that all of Petitioner's claims are barred because the petition violates the statute of limitations and two of Petitioner's three claims are procedurally defaulted.

1   **STATUTE OF LIMITATIONS**

2       On September 28, 2012, Petitioner filed his federal habeas petition in this Court.

3   (Doc. 1.) Under the Antiterrorism and Effective Death Penalty Act (AEDPA), federal

4   petitions for writ of habeas corpus filed by state prisoners are governed by a one-year statute

5   of limitations period. 28 U.S.C. § 2244(d)(1).  The limitations period begins to run from the

6   latest of:

7           (A) the date on which the judgment became final by the conclusion of
            direct review or the expiration of the time for seeking such review;
8
            (B) the date on which the impediment to filing an application created
9           by State action in violation of the Constitution or laws of the United States is
            removed, if the applicant was prevented from filing by such State action;
10
            (C) the date on which the constitutional right asserted was initially
11          recognized by the Supreme Court, if the right has been newly recognized by
            the Supreme Court and made retroactively applicable to cases on collateral
12          review; or

13          (D) the date on which the factual predicate of the claim or claims
            presented could have been discovered through the exercise of due diligence.
14
    *Id.*
15
        In applying (d)(1)(A), the Court must assess when direct review of Petitioner's
16
    convictions became final. The Arizona Court of Appeals denied review on Petitioner's direct
17
    appeal on March 17, 2008, and his time to seek review in the Arizona Supreme Court expired
18
    thirty days later, on April 16, 2008. Ariz. R. Crim. P. 31.19. Thus, the judgment against
19
    Petitioner became final for purposes of § 2244(d)(1)(A) on that date.[1] *See Hemmerle v.*
20

21   _____

22          [1]      Respondent stated that direct review was not complete until the time for a writ
     of certiorari to the U.S. Supreme Court had expired. In this case, Petitioner is not entitled to
23   this ninety-day period. It is well established in the Ninth Circuit that "direct review" includes
     the period within which a petitioner can file a petition for a writ of certiorari from the United
24   States Supreme Court, whether or not the petitioner actually files such a petition. *See Bowen
     v. Roe*, 188 F.3d 1157, 1158 (9th Cir.1999). However, certiorari review with the U.S.
25   Supreme Court may only be sought following a decision or denial of discretionary review
     by the state court of last resort, i.e. the Arizona Supreme Court. *Flynt v. Ohio*, 451 U.S. 619,
26   620 (1981). Accordingly, the time for seeking a writ of certiorari with the U.S. Supreme
     Court cannot be considered in determining when Petitioner's judgment became final when
27   review by the state court of last resort was not sought. *Eisermann v. Penarosa*, 33 F. Supp.2d
     1269 (D. Hawaii 1999); *see* 28 U.S.C. § 1257 (certiorari jurisdiction limited to highest
28   available state court); Sup. Ct. Rule 13 (timeliness from decision of highest state court); *see
     also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir.2004) ( "If a criminal defendant has
     pursued his direct appeal through the highest state court, then this period includes the 90 days

1  *Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007) (assessing § 2244 finality in light of the

2  Arizona rules), *cert. denied*, 129 S. Ct. 33 (2008); *Wixom v. Washington*, 264 F.3d 894, 898

3  (9th Cir. 2001).The statute of limitations began to run, absent tolling, on April 17, 2008.

4      The statute of limitations is tolled during the time a properly filed state PCR

5  application is pending.  28 U.S.C. § 2244(d)(2).  Petitioner initiated his first PCR proceeding

6  by filing a notice on June 19, 2008, which triggered tolling as of that date. *See Isley v. Ariz.*

7  *Dep't of Corrections*, 383 F.3d 1054, 1056 (9th Cir. 2004) (finding that tolling period begins

8  with filing of notice pursuant to Arizona Rule of Criminal Procedure 32.4(a)). Ninety-three

9  days of the limitations period expired before tolling began. The period of tolling continued

10  through November 15, 2010, when the Arizona Court of Appeals issued its mandate.

11      Petitioner filed a notice for his second PCR proceeding on March 1, 2011. The state

12  argues that the statute of limitations was not tolled during this proceeding because the state

13  courts found the claims untimely, which rendered the petition not properly-filed under

14  § 2244(d)(2). The Court disagrees. The last reasoned state court decision was that of the

15  appellate court. The court of appeals found the ineffective assistance of counsel (IAC) claims

16  precluded because IAC had been raised previously and the claim of newly discovered

17  evidence was precluded because it could have been raised previously and did not satisfy the

18  new evidence exception. (Doc. 9, Ex. Q.) The claims were dismissed as precluded and barred

19  from being raised in a successive petition. (*Id.*) Although Gutierrez's second PCR petition

20  may have been untimely, the state court did not dismiss it on that basis. (*Id.*, Exs. O, Q.)

21      The Supreme Court holds that state procedural bars setting forth conditions to

22  obtaining relief do not render a petition improperly filed for purposes of § 2244(d)(2). *Artuz*

23  *v. Bennett*, 531 U.S. 4, 10-11 (2000). The bars at issue in *Artuz* were parallel to those at issue

24  here, they operated to bar claims that had been determined or could have been determined

25  on appeal. *Id.*; *see also Hess v. Ryan*, 651 F. Supp.2d 1004, 1023-25 (D. Ariz. 2009) (finding

26

27  for filing a petition for certiorari to the Supreme Court. If not, then it includes the time for

28  seeking further state-court direct review."). The resolution of this issue does not change the
outcome of this case.

denial of a claim based on Rule 32.1(g), an exception to preclusion for a change in the law, not to be a time bar rendering the petition improperly filed); *Martinez v. Schriro*, No. 07-574-PHX-EHC (JRI), 2007 WL 4951234 *7 (D. Ariz. Nov. 19, 2008) (finding an Arizona state court preclusion ruling did not render a petition improperly filed). These are in contrast to a time limit for PCR petitions, which the Court holds to be a condition to filing, such that an untimely petition is not considered properly filed for purposes of statutory tolling. *See Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005); *see also Artuz*, 531 U.S. at 8. Because the second PCR proceeding was properly filed, it tolled the statute of limitations from March 1, 2011, to September 13, 2012, when the mandate issued.

A total of 213 days of the limitations period expired before Petitioner filed in this Court on September 28, 2012: 93 days before Petitioner filed his first PCR petition; 106 days between Petitioner's two PCR petitions, and 14 days after the conclusion of his second PCR proceeding and the filing of his federal petition. Because Petitioner filed within one year of his judgement becoming final, excluding time that was statutorily tolled, his petition is timely.

### PROCEDURAL DEFAULT

Respondent argues Claims 1 and 3 are procedurally defaulted. The Court finds that all three claims should be evaluated for proper exhaustion.

### Principles of Exhaustion and Procedural Default

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).

In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be

5

procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray*, 518 U.S. at 161-62.

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

**Claims 1 and 3**

Claims 1 and 3 are addressed together because they contain overlapping allegations and are in the same procedural posture. In Claim 1, Petitioner alleges he was denied his Sixth Amendment right to a fair trial because he was not aware that his counsel was addicted to cocaine at the time he represented Petitioner, which deprived him of his right to select other counsel. In Claim 3, Petitioner alleges trial counsel's drug use denied him the right to effective assistance of counsel and counsel of his choice.

Petitioner did not raise these claims on direct appeal or in his PCR petition. (Doc. 9, Exs. A, E.) Petitioner raised them both in his second PCR petition and his petition for review from denial of that petition. (*Id.*, Exs. N, P.) The appellate court found these claims precluded because Gutierrez could have raised them in his first PCR petition. (*Id.*, Ex. Q.)

1    A federal claim is barred from review by procedural default if the last state court

2    rendering judgment on the claim "clearly and expressly" states that its ruling is based on a

3    procedural bar. *Harris v. Reed*, 489 U.S. 255, 264 (1989). The Arizona Court of Appeals did

4    so here. (Doc. 9, Exs. P, S.) For a state procedural bar to constitute adequate and independent

5    grounds to support a federal court's finding of procedural default, the rule must be "clear,

6    consistently applied, and well-established at the time of the petitioner's purported default."

7    *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). The Ninth Circuit has found that

8    Arizona regularly and consistently relies on its procedural default rules. *Martinez-Villareal*

9    *v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996). Petitioner has not argued otherwise. Thus,

10    Claims 1 and 3 are procedurally defaulted.

11    **Claim 2**

12    Petitioner alleges trial counsel was ineffective in violation of the Sixth Amendment

13    because he "did not produce any evidence or witnesses to help corroborate his client's

14    innocence." (Doc. 1 at 7.) In his first PCR petition, Gutierrez alleged counsel was ineffective

15    for failing to investigate (1) the possibility that the offense was committed by someone else

16    and (2) the DNA evidence. (Doc. 9, Ex. E.) Specifically, Petitioner argued the police

17    interviewed Jose Baldenegro, who stated that he saw two men leave the house immediately

18    after the shooting and drive away in a white vehicle. (*Id.*) Petitioner alleges counsel did not

19    interview Baldenegro nor the persons involved in obtaining and testing the DNA taken from

20    the gun. (*Id.*) In the petition for review, Gutierrez alleged trial counsel was ineffective solely

21    for failing to call Baldenegro as a witness. (*Id.*, Ex. I.) This claim was denied on the merits.

22    (*Id.*, Exs. G, H, J.) Therefore, Claim 2 is exhausted only to the extent it alleges trial counsel

23    was ineffective for failing to investigate and call Baldenegro as a witness.

24    To the extent Petitioner is attempting to include allegations beyond the issue involving

25    witness Baldenegro, they were not fairly presented in state court. If Petitioner were to return

26    to state court now to litigate these allegations they would be found waived and untimely

27    under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because they

28    do not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).

1  Therefore, such allegations are technically exhausted but procedurally defaulted.

2  Additionally, they are so vague that they do not establish a right to relief. *See James v. Borg*,

3  24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations without a specific statement of facts

4  insufficient for habeas relief).

5          **Cause and Prejudice**

6          Claims 1 and 3 are procedurally defaulted and subject to dismissal absent a ground

7  to overcome the default. In his supplemental reply, Petitioner asserts that his failure to

8  properly raise Claims 1 and 3 was due to the ineffective assistance of counsel assigned for

9  his first PCR proceeding.

10          There is no constitutional right to PCR counsel, thus, the Sixth Amendment is not

11  implicated when counsel is ineffective in such a proceeding. However, because a PCR

12  proceeding is the first time in Arizona that IAC at trial may be raised, the Supreme Court

13  holds that if PCR counsel is ineffective pursuant to the standards of *Strickland v.*

14  *Washington*, 466 U.S. 668 (1984), in failing to raise a trial IAC claim, that may constitute

15  cause to excuse a default of that claim. *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012). Thus,

16  PCR counsel's failure to raise Claims 1 and 3 could operate as cause to excuse the defaults.

17  The Court will assess the merits of Claims 1 and 3 to determine whether Petitioner was

18  prejudiced by PCR counsel not raising them.

19          Claims 1 and 3, taken together, allege Petitioner was denied his right to effective

20  assistance of counsel because he was not aware that trial counsel was addicted to cocaine,

21  which denied him a right to select other counsel and to a fair trial. Petitioner appears to be

22  alleging both that he was deprived of his right to counsel of his choice and that his counsel

23  was constitutionally ineffective. As these are distinct claims, the Court will evaluate each one

24  individually.

25          Pursuant to the Sixth Amendment, a defendant who does not require appointed

26  counsel is entitled to an attorney of his choice. *See United States v. Gonzalez-Lopez*, 548 U.S.

27  140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). When the trial

28

8

1  court wrongly deprives a defendant of this choice, the constitutional violation is considered

2  structural error and it is not subject to harmless error analysis. *Id.* at 150.

3      Petitioner relies upon *Gonzalez-Lopez* (Doc. 1 at 13); however, that case is factually

4  distinct from Gutierrez's circumstances. Gonzalez-Lopez selected an attorney to replace

5  someone his family had hired; however, when the new counsel requested admission *pro hac*

6  *vice*, the court twice denied it based on the attorney's violation of a rule of professional

7  conduct in a different case. 548 U.S. at 142-43. The court denied a third request by counsel

8  to appear on Gonzalez-Lopez's behalf and the defendant proceeded to trial with different

9  counsel. *Id.* at 143. Here, Gutierrez retained trial counsel Rafael Gallego. He has not

10 indicated that at the time of representation he expressed any problems to the trial court. Nor

11 did he seek to change counsel. Only long after trial, when Petitioner discovered that Gallego

12 had been using cocaine during that period, has Gutierrez stated that he would have chosen

13 different representation. While Gutierrez's concern may be understandable, the trial court in

14 no way prevented him from having the counsel of his choice at the time of trial. The Court

15 finds Petitioner's Sixth Amendment right to counsel of his choice was not violated.

16      Next, the Court evaluates whether Petitioner has established that trial counsel was

17 constitutionally ineffective. There is a Sixth Amendment right to effective assistance of

18 counsel at trial. *See Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under

19 *Strickland*, a petitioner must show that counsel's representation fell below an objective

20 standard of reasonableness and that the deficiency prejudiced the defense. 466 U.S. at 687-

21 88.

22      Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court

23 "need not determine whether counsel's performance was deficient before examining the

24 prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it

25 is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice

26 . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at

27 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but

28 for counsel's unprofessional errors, the result of the proceeding would have been different.

1   A reasonable probability is a probability sufficient to undermine confidence in the outcome."
2   *Id.* at 694.

3         Petitioner has failed to affirmatively prove prejudice as to these claims. Assuming his
4   facts to be true, that counsel was addicted to cocaine at the time he represented Gutierrez,
5   Petitioner has not alleged what counsel should have done differently that would have had a
6   reasonable probability of changing the result of Petitioner's trial or sentence. Petitioner
7   merely concludes that the outcome at trial would have been different if he had notice that
8   counsel was addicted to cocaine. This is insufficient. Although being represented by counsel
9   that was subsequently disciplined by the State bar for representing clients while under a drug
10  addiction appears facially unfair, Petitioner has failed to allege, let alone demonstrate, that
11  it impacted the outcome of his trial or sentence

12        In light of this analysis, Petitioner has not demonstrated actual prejudice arising from
13  PCR counsel's failure to raise Claims 1 and 3. Therefore, they are procedurally defaulted and
14  dismissed on that ground. Regardless of exhaustion, they are meritless and the Court
15  alternatively denies them on that basis. *See* 28 U.S.C. § 2254(b)(2).

16  **MERITS**

17  **Legal Standard for Relief Under the AEDPA**

18        The AEDPA established a "substantially higher threshold for habeas relief" with the
19  "acknowledged purpose of 'reducing delays in the execution of state and federal criminal
20  sentences.'"   *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v.
21  Garceau*, 538 U.S. 202, 206 (2003)).   The AEDPA's "'highly deferential standard for
22  evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of
23  the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v.
24  Murphy*, 521 U.S. 320, 333 n.7 (1997)).

25        Under the AEDPA, a petitioner is not entitled to habeas relief on any claim
26  "adjudicated on the merits" by the state court unless that adjudication:

27      (1) resulted in a decision that was contrary to, or involved an unreasonable
     application of, clearly established Federal law, as determined by the Supreme
28      Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

**Claim 2**

In the exhausted portion of this claim, Petitioner alleges trial counsel should have investigated and presented evidence from witness Jose Baldenegro. The PCR court held an evidentiary hearing on this claim, during which trial counsel, Baldenegro and the detective that had interviewed Baldenegro before trial testified. (Doc. 9, Ex. S.)

The Court summarizes the critical points of the testimony. Baldenegro testified that during the party he was outside on his phone and heard gunshots. (Doc. 9, Ex. S at 14.) He was standing four or five houses away on a dark street and saw two guys run out of the house and drive away in a white Bronco-type vehicle. (*Id.* at 15, 23.) He could not see their faces or what clothes they were wearing. (*Id.* at 15.) As he was running inside other people were coming out. (*Id.* at 15-16.) Baldenegro was friends with two of the victims. (*Id.* at 16.) Trial counsel Rafael Gallego testified that his assistant conducted an interview of Baldenegro and he learned that Baldenegro's interview was consistent with his police statement. (*Id.* at 46, 49.) Gallego stated that he made a strategic decision not to call Baldenegro because he did not see the shooting and, because he was friends with the victims, counsel did not want to risk him testifying contrary to his prior statements. (*Id.* at 46.)

The PCR court denied this claim finding that counsel's actions did not fall below an objective standard of reasonableness:

> Mr. Baldenegro could not provide a description of what the men looked like or what they were wearing, and he stated that they were not carrying guns. Thus, Mr. Baldenegro's account does not exculpate petitioner. Further, at the evidentiary hearing, Mr. Baldenegro testified that Mr. Baldenegro was a friend of the victims in this case. Mr. Gallego testified that he did not call Mr. Baldenegro as a witness at trial because of the risk that calling him as a witness would have presented. Mr. Gallego's decision to not call Mr. Baldenegro as a witness at trial was a tactical decision, which will not support a claim of ineffective assistance of counsel.

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(Doc. 9, Ex. G at 3.) The court further concluded Gutierrez had failed to establish that, but for counsel's actions, there was a reasonable probability the outcome would have been different. (*Id.*) The appellate court affirmed this decision. (Doc. 9, Ex. J.)

First, the Court reviews the state courts' factual finding that trial counsel made a strategic decision and assesses whether that finding was objectively unreasonable. *See Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing 28 U.S.C. § 2254(d)(2)). As testified to by counsel, he has extensive experience trying serious felonies. (Doc. 9, Ex. S at 43.) Further, his assistant interviewed Baldenegro before trial, allowing counsel to evaluate his possible testimony. There is no evidence countering counsel's testimony that he made a strategic decision not to call Baldenegro as a witness. The record supports the state courts' finding that counsel made a strategic decision not to call Baldenegro as a witness.

Next, the Court must review the objective reasonableness of the state courts' ruling that counsel's strategic decision fell within reasonable professional judgment under *Strickland*. *See Wood*, 558 U.S. at 302-03 & n.3. Gutierrez has presented no evidence that counsel's decision was unreasonable, no opinion from another attorney, no prevailing norms from attorney guidelines, and no evidence from himself regarding the decision. *See Matylinsky v. Budge*, 577 F.3d 1083, 1092 (9th Cir. 2009) (finding that defendant presented no evidence of unreasonableness that could satisfy "heavy burden" of proving that trial strategy was deficient). As found by the PCR court, Baldenegro did not witness the shooting and could not identify the shooter or the men he saw leaving the house. Further, many other people departed the scene promptly after the shooting, thus, the people Baldenegro saw leaving were not highly suspicious. (Doc. 9, Ex. S at 22, 35, 58.) In light of Baldenegro's relationship with two of the victims, counsel had reason to be concerned about relying upon his testimony. Overall, it was reasonable for counsel not to call Baldenegro as a witness. The state courts' denial of this claim was not an objectively unreasonable application of *Strickland*. Further, because Baldenegro did not witness the shooting nor could he identify the men he saw run out of the house, there is not a reasonable probability the outcome of the proceeding would have been different if he had testified. Because Petitioner has failed to

12

1  establish either prong under *Strickland*, it was not objectively unreasonable for the PCR court

2  to deny this claim. This portion of Claim 2 is denied on the merits.

3  **CONCLUSION**

4        Claims 1 and 3 are dismissed as procedurally defaulted and, alternatively, dismissed

5  on the merits. Claim 2 is dismissed on the merits to the extent it alleges counsel was

6  ineffective in investigating and presenting witness Baldenegro. The remainder of Claim 2 is

7  dismissed as procedurally defaulted.

8  **CERTIFICATE OF APPEALABILITY**

9        Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court must

10  issue or deny a certificate of appealability (COA) at the time it issues a final order adverse to

11  the applicant. A COA may issue only when the petitioner "has made a substantial showing

12  of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing can be

13  established by demonstrating that "reasonable jurists could debate whether (or, for that matter,

14  agree that) the petition should have been resolved in a different manner" or that the issues

15  were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S.

16  473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural

17  rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states

18  a valid claim of the denial of a constitutional right, and (2) whether the court's procedural

19  ruling was correct. *Id.* The Court finds that reasonable jurists would not find this Court's

20  procedural rulings debatable nor could they debate that the merits of any claim should have

21  been resolved differently. Therefore, a COA will not issue.

22

23        Accordingly,

24        **IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DISMISSED**.

25        **IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment and

26  close this case.

27

28

13

1    **IT IS FURTHER ORDERED** that, pursuant to Rule 11 of the Rules Governing

2    Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a

3    certificate of appealability.

4    DATED this 2nd day of July, 2013.

D. Thomas Ferraro
United States Magistrate Judge

14